IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| MONICA TOGUCHI, individually and as the personal representative of the estate of Charles Anthony Lee, II,<br><br>      Plaintiff,<br><br>    vs.<br><br>KATHRYN MATAYOSHI, *et al.*,<br><br>      Defendants. | CIVIL NO. 13-00380 DKW-KSC<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS** |

**ORDER GRANTING DEFENDANTS'**
**MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

Monica Toguchi's First Amended Complaint ("FAC") asserts four official and individual capacity claims against various State of Hawai'i defendants whom she holds responsible for the suicide of her son, Charlie. Because a Section 1983 claim may not be based on an alleged violation of Section 504 of the Rehabilitation Act or of the Individuals with Disabilities Education Act ("IDEA"), and because Toguchi fails to state a claim of negligent infliction of emotional distress ("NIED"), the Court dismisses with prejudice Counts 2 and 4 of the FAC. The Court also dismisses Counts 1 (Section 504 violation) and 3 (intentional infliction

of emotional distress ("IIED")), with leave to amend, because they lack the requisite specificity needed to state a claim.

## BACKGROUND

Shortly after moving to Hawai'i in 2007, Charlie began attending fifth grade at Mililani Uka Elementary School. Toguchi "requested special education services for her son because Charlie had a difficult time adjusting to his new life in Hawaii and to Mililani Uka Elementary School." FAC ¶ 16. Toguchi alleges that although Charlie was transferred to Mililani Middle School to address some of his behavioral problems, he finished his sixth grade year without any notable issues. FAC ¶ 18.

Starting with his seventh grade year, Charlie began cutting himself. He continued to do so, despite hospitalization at Queen's Medical Center. During his eighth grade year, Charlie received in-home intensive therapy from the Department of Health ("DOH"). FAC ¶¶ 19–20. Toguchi alleges that Charlie's behavioral problems escalated:

> Charlie locked himself in Plaintiff's car with a knife and refused to attend school and on another occasion stood on top of a three story building and threatened to jump. Following both of these incidents Charlie was taken to Queen[']s Medical Center for treatment.

FAC ¶¶ 24–25.

During this time, Toguchi alleges that she expressed concern to individuals at the DOH and to individuals on Charlie's Individual Education Program ("IEP")

team, to the effect that the programs in place were insufficient to address Charlie's problems. Despite these expressions, Toguchi alleges that the DOH discontinued Charlie's in-home therapy after five months and thereafter "only provided minimal care management services" for Charlie "even though it was clear that Charlie still needed those or other mental health services." FAC ¶ 27–28.

Toguchi alleges that Charlie's behavior continued to decline as he transitioned to his ninth grade year at Roosevelt High School, and that defendants continued to do little or nothing in response to address his escalating problems. According to Toguchi:

> At the initial IEP meeting which occurred on August 18, 2011, the Defendants failed and refused to consider or provide the level of intensive and/or residential care that Charlie required based upon his long history of self[-]abusive behaviors and his most recent difficulties adjusting to a new school.
>
> Following the initial IEP meeting Charlie continued to cut himself and threatened to commit suicide by hanging.
>
> Although Plaintiff regularly voiced her concerns regarding Charlie's threats to take his own life, the threats were not taken seriously by any of the Defendants, who instead began to reduce Charlie's services.

FAC ¶¶ 31–33 (paragraph numbering omitted).

Because of Charlie's poor school attendance record, he was placed at Home Maluhia, where the DOH initially provided Multi Systemic Treatment ("MST"). Even this, however, did not meet Toguchi's expectations because she believed that Charlie required residential treatment. Regardless, the DOH shortly thereafter

terminated the MST, allegedly because, without an IEP, "Charlie could not be in Home Maluhia and be receiving MST at the same time." On the evening of November 6, 2011, the same day that he was released from Home Maluhia (after being there for two weeks), Charlie committed suicide. FAC ¶¶ 34–37.

Toguchi generally asserts that Defendants: "did nothing to change the IEP to help Charlie benefit from his education"; "knowingly, deliberately, and repeatedly failed to determine the educational and related services necessary"; "failed to assure that the programs and/or services provided to Charlie resulted in significant learning and/or improvement in his mental health"; "failed to take appropriate corrective actions"; "had knowledge that it was substantially likely that their acts and failures to act . . . would jeopardize Charlie's federally protected rights to have meaningful access to education and reasonable accommodations and could potentially result in Charlie harming himself"; and "proximately caus[ed] Charlie's death at the age of fourteen." FAC ¶¶ 38–43.

The FAC asserts four claims: violation of § 504 of the Rehabilitation Act against all defendants in their official capacities (Count 1); a 42 U.S.C. § 1983 claim against all defendants in their individual capacities, for violations of § 504 of the Rehabilitation Act and for violations of the IDEA (Count 2); and IIED (Count 3) and NIED (Count 4) against all defendants in unspecified capacities.

Defendants have filed motions to dismiss the FAC and a motion for judgment on the pleadings.

## STANDARD OF REVIEW

Rule 12(b)(6) permits a motion to dismiss for failure to state a claim upon which relief can be granted. Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). "Analysis

under Rule 12(c) is 'substantially identical' to analysis under Rule 12(b)(6) because, under both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting *Brooks v. Dunlop Mfg. Inc.*, No. 10-04341 CRB, 2011 WL 6140912, at *3 (N.D. Cal. Dec. 9, 2011)).

For a Rule 12(c) motion, the allegations of the nonmoving party are accepted as true, while any contradictory allegations of the moving party are assumed to be false. *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). "The Court inquires whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face.'" *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Therefore, "'[a] judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Marshall Naify Revocable Trust v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting *Fajardo v. Cnty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999)).

## DISCUSSION

### I. Count 1 - Section 504 of the Rehabilitation Act

Toguchi asserts that defendants, in their official capacities, "violated § 504 of the Rehabilitation Act by denying Charlie adequate, reasonable, and essential

6

programs and services . . . ." and that "[t]his violation and denial of services constituted a deliberate indifference to Charlie's rights guaranteed by the Rehabilitation Act . . . ." FAC ¶¶ 47–48.

Toguchi may prevail on a claim for damages under § 504:

> by establishing that an organization that receives federal funds violated § 504 intentionally or with deliberate indifference. Plaintiffs may establish that an organization violated § 504 by showing that the public entity discriminated against, excluded, or denied the benefits of a public program to a qualified person with a disability. This includes showing that the public entity denied the plaintiff a reasonable accommodation. A violation of one of the regulations implementing § 504 may support a claim for damages if the violation denied the plaintiff meaningful access to a public benefit, and the defendant organization acted with deliberate indifference.

*Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010) (internal citations and quotation marks omitted). Although Toguchi has generally pled most of these elements, she fails to plead with the requisite specificity required by deliberate indifference.

"Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). Toguchi generally asserts that defendants "had knowledge that it was substantially likely that their acts and failures to act . . . would jeopardize Charlie's federally protected rights" and that defendants "failed to act upon that likelihood . . . ." FAC ¶¶ 42–43. While these statements mirror the general requirements listed in *Duvall*,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to defeat a motion to dismiss]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

What Toguchi has failed to provide is any factual content showing the specific knowledge the defendants actually had, including Charlie's condition and what benefits, programs or services Defendants knew Charlie was entitled to, and how defendants specifically failed to act on that knowledge. *See Duvall*, 260 F.3d at 1139 (citing *Memmer v. Marin Cty Courts*, 169 F.3d 630, 633 (9th Cir. 1999)) (noting that the Ninth Circuit has previously "required the plaintiff to identify 'specific reasonable' and 'necessary' accommodations that the defendant failed to provide" to establish deliberate indifference). Without those specifics, Count 1 fails to state a claim. The Court, however, grants Toguchi leave to amend to provide the specific factual content necessary to state a § 504 claim for deliberate indifference.

## II. Count 2 – Section 1983 Claims

Toguchi asserts that all defendants, acting in their individual capacities, "violated civil rights guaranteed to Charlie by § 504 of the Rehabilitation Act, IDEA, and 42 U.S.C. §§ 1983 . . . ." FAC § 50. Ninth Circuit law, however, prohibits such a claim.

"[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *see also Jefferies v. Albert*, 2009 WL 4064799, at *7 (D. Haw. Nov. 24, 2009) (citing *Vinson* and holding that "[t]he comprehensive remedial scheme of those acts bar such claims. Further, courts addressing this issue have found that the ADA and Rehabilitation Act provide sufficiently comprehensive remedies for violations of plaintiff's rights, such that a plaintiff is foreclosed from recovering under § 1983 as well." (internal quotation marks and citation omitted)). Consequently, Toguchi's Section 1983 claim against the individual defendants for violation of § 504 of the Rehabilitation Act must be dismissed with prejudice.

Similarly, "the comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA." *Blanchard v. Morton Sch. Dist.*, 509 F.3d 934, 938, (9th Cir. 2007). Although neither counsel for Toguchi nor any of the defendants cited to *Blanchard* in the briefing of the motions presently before the Court, it is well-established that Toguchi may not assert a Section 1983 claim against the individual defendants here for violations of the IDEA. *See, e.g.*, *Henry A. v. Wilden*, 678 F.3d 991, 1011 (9th Cir. 2012) ("With respect to the IDEA claim, we have previously held that the IDEA has a comprehensive enforcement scheme that forecloses enforcement

9

through § 1983." (citing *Blanchard*)); *M.Z. v. Lake Elsinore Unified Sch. Dist.*, 410 Fed. Appx. 53, 54 (9th Cir. 2011) ("The district court properly dismissed [plaintiff]'s section 1983 claims insofar as they related to the alleged denial of rights established by the IDEA." (citing *Blanchard*)); *Jefferies*, 2009 WL 4064799, at *7 (quoting *Blanchard* and disposing of a section 1983 claim for violations of the IDEA).

Accordingly, the Court dismisses Count 2 of the FAC with prejudice because any amendment would be futile in light of the law in this Circuit.

## III. Count 3 – IIED

Toguchi alleges that defendants' deprivation and withdrawal of services and programs for Charlie was "intentional and/or reckless and outrageous and caused Plaintiff to suffer severe emotional distress." FAC ¶ 52. However, Toguchi has not sufficiently pled with specificity what each defendant did, when it was done, and why that conduct was outrageous. Consequently, Count 3 is dismissed with leave to amend.

"[T]he tort of IIED consists of four elements: '1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another.'" *Young v. Allstate Ins. Co.*, 119 Hawai'i 403, 429 (2008) (quoting *Hac v. Univ. of Hawaii*, 102

10

Hawaiʻi 92, 106–07 (2003)).  As the Court discussed with the parties at the November 28, 2014 hearing, the standard for an IIED claim is a very high one:

> In explaining the type of "outrageous" conduct that makes a claim for intentional infliction of emotional distress actionable, the *Restatement (Second) of Torts* states:
>
> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Ross v. Stouffer Hotel Co. (Hawaiʻi) Ltd., Inc.*, 76 Hawaiʻi 454, 465 n. 12, 879 P.2d 1037, 1048 n. 12 (1994) (quoting *Restatement (Second) of Torts* § 46, cmt. d. (1965)).  In other words, allegations of IIED are not merely serious, but grave. Even in allegation form, they have the real potential to sully the reputations, character, and ethics of those they target.  Accordingly, they are not the type of allegations that one can sufficiently plead by grouping defendants together as Toguchi has done in the FAC.  Instead, in order to adequately respond to the allegations of serious conduct alleged by Toguchi to justify a claim of IIED, each defendant is entitled to know, before that defendant can be expected to respond,

what specific conduct by him or her is alleged to support the IIED claim, when that conduct occurred, and why that conduct rises to the level of outrageous.

In its present form, the FAC simply does not provide the minimal factual content that would allow the Court or an average community member to draw the reasonable inference that each, or even any, defendant is liable for IIED. As such, Count 3 fails to state a claim. The Court, however, grants Toguchi leave to amend Count 3 to provide the specific factual content necessary to state an IIED claim.

## IV. Count 4 – NIED

Toguchi asserts that "Defendants' negligent actions have caused immense mental distress to Plaintiff . . . ." FAC ¶ 56. Defendants assert that Toguchi's NIED claim is barred by Hawaii law in that Defendants did not owe Charlie a duty to prevent his suicide. The Court agrees and dismisses Count 4 with prejudice.

"The elements of a claim for negligent infliction of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress." *Caraang v. PNC Mortg.*, 795 F. Supp. 2d 1098, 1122 (D. Haw. 2011). Additionally, "[a] prerequisite to any negligence action is the existence of a duty owed by the defendant to the plaintiff, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks." *Lee v.*

*Corregedore*, 83 Hawaiʻi 154, 158–159 (1996) (internal citation, quotation marks, and brackets omitted).

Here, Toguchi cannot state an NIED claim because she cannot assert any duty on the part of Defendants to prevent Charlie's suicide. In general:

> an actor will not be held liable for the suicide of another because suicide constitutes an independent intervening act so extraordinary as not to have been reasonably foreseeable by the original tortfeasor. But, if a special relationship exists and the suicide is reasonably foreseeable, only then would the actor be required to take action that was reasonable under the circumstances. Therefore, without a special relationship and foreseeability, an actor would not be legally required to affirmatively act to prevent a suicide.

*Id.* at 160 (internal quotation marks and citation omitted). More specifically, in *Lee*, the Hawaiʻi Supreme Court concluded that --

> [a mental health counselor] and the State did not have custody nor control over [the deceased prior to his suicide], and thus, they did not share a special relationship sufficient to impose a duty of care on [the counselor] to prevent [the deceased's] suicide. Furthermore, there are strong public policy considerations that weigh against recognizing tort liability for [the counselor's] failure to prevent [the deceased's] suicide. We hold that [the counselor] did not have a duty to prevent [the deceased's] suicide.

*Id.* at 172. Similarly here, the Defendants did not have custody or control over Charlie at the time of his death, and thus they did not share a special relationship with him that would impose a duty of care.

Toguchi's efforts to distinguish *Lee* are unavailing. To the contrary, the policy reasons behind the Hawaiʻi Supreme Court's decision in *Lee* are even more

13

applicable in the context of this case where the defendants here are not counselors or mental health physicians and thus would not be expected to have the same level of mental health expertise as the counselors in *Lee*. At the November 28 hearing, Toguchi's counsel additionally asserted that defendants held a *statutory* duty of care under the IDEA or § 504 of the Rehabilitation Act, removing their responsibilities from the confines of *Lee*. While counsel correctly asserts that a standard of conduct may be defined by statute, counsel did not offer, in briefing or at the hearing, any specific statutory section of the IDEA or the Rehabilitation Act that specifies the standards of conduct of any of the named defendants here, or any provision by which such standards could be inferred, nor has the Court independently found any. Toguchi's counsel, as the attorney for the appellants in *Lee* who made a similar argument for statutory duty in that case, is well aware that "the statute must specify or imply standards or 'requirements of conduct' that will create civil liability." *Lee*, 83 Hawaiʻi at 172. Notwithstanding this specific awareness, however, counsel has not pointed to any provision that would impose "standards of conduct on the part of [defendants] necessary to avoid liability for negligence, nor can such standards of conduct be inferred from the [language of the IDEA or Rehabilitation Act]," and the Court will not be left to guess  *Id.* at 173.

The Count 4 NIED claim is dismissed with prejudice, as amendment would be futile.

## CONCLUSION

The Court hereby grants the motions to dismiss Counts 1 through 4 and the motion for judgment on the pleadings (Dkt. Nos. 20, 34, and 59). Toguchi is granted leave to amend Counts 1 and 3 in conformity with this order. Any amended complaint shall be filed by **January 30, 2015**. Failure to file an amended complaint by **January 30, 2015** will result in the automatic dismissal of this action without further notice.

IT IS SO ORDERED.

DATED: December 31, 2014 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

Monica Toguchi, et al. v. Kathryn Matayoshi, et al.; CV 13-00380 DKW/KSC; ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS AND GRANTING LEAVE TO AMEND COUNTS 1 AND 3